UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                        CRIMINAL NO. 3:22-CR-76-DPJ-LGI

CHARLES HEMBREE

ORDER

Defendant Charles Hembree seeks an order dismissing the indictment charging him under 18 U.S.C. § 922(g)(1).  According to Hembree, § 922(g)(1)'s prohibition on felons possessing firearms violates the Second Amendment to the United States Constitution.  His motion [24] is denied.

According to the indictment, Hembree possessed a Rohm .22 LR caliber pistol and 87 rounds of ammunition from October 30, 2020 to March 8, 2021.  Indictment [4] at 1.  Under § 922(g)(1), "[i]t shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."  Hembree has a prior conviction for possessing with intent to distribute methamphetamine.

Hembree says § 922(g)(1) violates the Second Amendment as applied to him.  The Second Amendment states:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  Until recently, there was no dispute "that § 922(g)(1) does not violate the Second Amendment."  *United States v. EtchinsonBrown*, No. 22-10892, 2023 WL 7381451, at *3 (5th Cir. Nov. 7, 2023) (per curiam) (citing *United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003)).

The question here is whether that precedent withstood the United States Supreme Court's opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). While the Fifth Circuit has not answered that question, almost every district court in this circuit has concluded that it did. *See, e.g.*, *United States v. Letterman*, No. 1:23-CR-66-HSO-BWR-1, 2023 WL 7336562, at *2 (S.D. Miss. Nov. 7, 2023); *United States v. French*, No. CR 23-00064-01, 2023 WL 7365232, at *1 (W.D. La. Nov. 7, 2023); *United States v. Herrera*, No. CR H-20-692, 2023 WL 5917414, at *1–2 (S.D. Tex. Sept. 11, 2023) (Rosenthal, J.).

To understand why, the Court starts with two cases preceding *Bruen*, *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Those cases, like *Bruen*, protect the rights of law-abiding citizens to possess firearms.

In *Heller*, the Court held that the District of Columbia could not deprive "law-abiding citizens" of the right to possess handguns to protect their homes. 554 U.S. at 625. It reached that conclusion by examining the Amendment's text and then "assess[ing] whether [the Court's] initial conclusion was 'confirmed by the historical background of the Second Amendment.'" *Bruen*, 142 S. Ct. at 2127 (quoting *Heller*, 554 U.S. at 592). But the *Heller* Court also noted that the right to bear arms "is not unlimited" and that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626; *see also id.* at 627 n.26 (stating that laws prohibiting felons from possessing firearms are "presumptively lawful regulatory measures"). *Heller* did, however, qualify a bit by stating that "there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." *Id.* at 635.

Two years later, that qualifier dropped away in *McDonald* when the Court extended *Heller* to the states under the Fourteenth Amendment. The Court again addressed the Second

2

Amendment rights of "law-abiding" citizens, applying the same historical analysis. *McDonald*, 561 U.S. at 790. This time, the Court said:

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill" . . . . We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms.

*Id.* at 786.

After *Heller* and *McDonald*, lower courts misconstrued the holdings and added a means-end scrutiny test to the analysis. *Bruen*, 142 S. Ct. at 2123–26. *Bruen* fixed that. There, the Court examined whether a New York carry-permit law could require applicants to demonstrate "a special need for self-defense." *Id.* at 2122. After noting that some circuits had incorrectly added a means-ends test, the Court summarized the applicable standard:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129–30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)); *see also United States v. Daniels*, 77 F.4th 337, 341 (5th Cir. 2023) (examining *Bruen* test). The Court held that requiring "law-abiding citizens" to prove "a special need for self-defense" violated the Second Amendment. *Bruen*, 147 S. Ct. at 2126.

"*Bruen* used the phrase 'law-abiding' fourteen times, including in the opening sentence, where it says that the Second Amendment 'protect[s] the right of an ordinary, law-abiding citizen to possess a handgun.'" *Daniels*, 77 F.4th at 342 (quoting *Bruen*, 142 S. Ct. at 2122). Finding that the applicants in *Bruen* were law-abiding, the Court then "turn[ed] to whether the plain text

3

of the Second Amendment protect[ed their] proposed course of conduct—carrying handguns publicly for self-defense." *Bruen*, 142 S. Ct. at 2134.

Though laws like § 922(g)(1) were not before the Court in *Bruen*, they were clearly on the Court's mind. For example, the majority observed that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality of . . . 'shall-issue' licensing regimes . . . which often require applicants to undergo a background check." *Id.* at 2139 n.9. Those laws "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* (quoting *Heller*, 554 U.S. at 635).

If that was not clear enough, Justice Alito reiterated his majority opinion in *McDonald*, stating again that the Court was not "disturb[ing] anything . . . said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157 (Alito, J., concurring). Justice Kavanaugh was even more explicit:

> As Justice Scalia wrote in his opinion for the Court in *Heller*, and Justice ALITO reiterated in relevant part in the principal opinion in *McDonald*: "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . . [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ."

*Id.* at 2162 (quoting *Heller*, 554 U.S. at 626) (Kavanaugh, J., concurring, joined by Roberts, C.J.). The three dissenting justices agreed. *Id.* at 2189 (Breyer, J., dissenting) ("I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding.").

Hembree says that's all dicta the Court must ignore. He's correct to an extent; those statements are dicta. But the Fifth Circuit has concluded that lower courts are "generally bound by Supreme Court dicta, especially when it is 'recent and detailed.'" *Hollis v. Lynch*, 827 F.3d

436, 448 (5th Cir. 2016) (quoting *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013)); *see also United States v. Becton*, 632 F.2d 1294, 1296 (5th Cir. 1980) ("We are not bound by dicta, even of our own court. . . . Dicta of the Supreme Court are, of course, another matter.").

In addition, Fifth Circuit cases construing *Heller*, *McDonald*, and *Bruen* give their dicta even more heft. After *Heller*'s historical approach, the Fifth Circuit was asked in *United States v. Anderson* to overrule its precedent upholding § 922(g)(1)—primarily *Darrington*, *supra*, and *United States v. Emerson*, 270 F.3d 203, 242 (5th Cir. 2001). 559 F.3d 348, 352 (5th Cir. 2009), *abrogation on other grounds recognized by United States v. Kelly*, 40 F.4th 276, 286 (5th Cir. 2022). *Anderson* concluded that "*Heller* provides no basis for reconsidering *Darrington*." *Id.* (quoting *Heller*, 554 U.S. at 626 (dicta affirming "longstanding prohibition on the possession of firearms by felons")); *see also Letterman*, 2023 WL 7336562, at *6 (examining *Anderson*).

"[F]or a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to the case before [the court]' and must 'unequivocally' overrule prior precedent." *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021) (quoting *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012)). *Bruen* doesn't do that.

While *Bruen* overruled circuits that added a means-end test to *Heller*, 142 S. Ct. at 2126–27, *Darrington*, *Anderson*, and *Emerson* never used that test when considering § 922(g)(1). *Darrington* addressed that point, noting that *Emerson* did not examine § 922(g)(1) under strict scrutiny. 351 F.3d at 635.

> On the contrary, we read *Emerson* as excluding felons as a class from the Second Amendment's protection of "the right of Americans generally to keep and bear their private arms as historically understood in this country . . . . [I]t is clear that felons . . . may be prohibited from possessing firearms."

5

*Id.* (quoting *Emerson*, 270 F.3d at 261). That is essentially what the dicta from *Heller* through *Bruen* stated. *See Letterman*, 2023 WL 7336562, at *6 (stating "nothing in *Bruen* explicitly abrogated *Darrington*'s reasoning").

And the Fifth Circuit's comments on *Bruen* itself change nothing. Hembree leans heavily on *United States v. Rahimi*, where the Fifth Circuit noted that its approach to Second Amendment cases became "obsolete" after *Bruen*. 61 F.4th 443, 450–51 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023). But *Rahimi* interprets the *Bruen* dicta in a way that at least counsels against revisiting the circuit's pre-*Bruen* rulings. *See Letterman*, 2023 WL 7336562, at *8 ("*Rahimi*'s reasoning does appear to reflect at least an assumption that Fifth Circuit precedent holding § 922(g)(1) constitutional remains binding. Thus, in the Court's view, to read *Rahimi* to abrogate *Darrington* and *Anderson* is too far a stretch.").

*Rahimi* acknowledged the Supreme Court's understanding that people who are not "law-abiding, adult citizens" are not "part of 'the people' whom the Second Amendment protects." *Bruen*, 142 S. Ct. at 2134. So, as in *Bruen*, the Fifth Circuit began by asking whether Rahimi was a law-abiding citizen before turning to the text and historical context. *Rahimi* explained that *Heller*'s reference to the Second Amendment rights of

> "law-abiding, responsible" citizens meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders "presumptively" tolerated or would have tolerated. *See* 554 U.S. at 627[] n.26 . . . ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). **Bruen's reference to "ordinary, law-abiding" citizens is no different.** *See* 142 S. Ct. at 2134.

61 F.4th at 452 (emphasis added). In other words, *Bruen* did not alter *Heller*'s statement that laws prohibiting felons from possessing firearms were "presumptively lawful." *Heller*, 554 U.S. at 627 n.26.

6

In Rahimi's case, the state had issued a protective order limiting his access to an ex-girlfriend. *Rahimi*, 61 F.4th at 449. When he was later found with a gun, a grand jury indicted him under 18 U.S.C. § 922(g)(8), which precludes firearm possession by those "subject to a court order that . . . restrains such person from harassing, stalking, or threatening an intimate partner." *Id.*

Apart from the protective order, Rahimi was arguably not a law-abiding citizen; he "was involved in five shootings in and around Arlington, Texas," some related to his involvement in "selling narcotics." *Id.* at 448. But the Fifth Circuit was careful to note that Rahimi had not been convicted for those acts or any other and that his civil order was not akin to a criminal conviction. *Id.* at 452. Using convictions as a sharp dividing line, the court found a "'strong presumption' that he remained among 'the people' protected by the amendment." *Id.*

The court explained that by looking to whether Rahimi had been convicted, it was "hew[ing] carefully to the Supreme Court's delineation of who falls within, and without, the overarching class of 'law-abiding, responsible citizens' covered by the Second Amendment." *Id.* at 452 n.6. Indeed, *Rahimi* cited with approval the Third Circuit's original panel decision in *Range v. Attorney General*, noting that the Third Circuit "uph[eld] 18 U.S.C. § 922(g)(1), which prohibits firearm possession by convicted felons, because 'the people' categorically 'excludes those who have demonstrated disregard for the rule of law through the commission of felony and felony-equivalent offenses.'" *Id.* at 452 (quoting *Range v. Attorney General*, 53 F.4th 262, 268 (3d Cir. 2022) *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023), *and on reh'g en banc*, 69 F.4th 96 (3d Cir. 2023).

Judge Ho explored this issue even further in his concurring opinion, noting that our "system allows the government to deny convicted criminals a wide range of liberties that it could

7

not deny to innocent, law-abiding citizens." *Id.* at 463 (Ho, J., concurring).  Thus, "[t]he Supreme Court has also made clear that our Nation's history and traditions include 'longstanding prohibitions on the possession of firearms by felons'—and that such measures are 'presumptively lawful.'" *Id.* at 464 (quoting *Heller*, 554 U.S. at 626 & n.26).  "So the government can presumably disarm dangerous convicted felons, whether they're incarcerated or not, without violating the Second Amendment." *Id.*

The Fifth Circuit later tracked *Rahimi* in *Daniels*, when it invalidated § 922(g)(3).  77 F.4th at 355.  That statute bars "unlawful user[s]" of controlled substances from possessing firearms.  18 U.S.C. § 922(g)(3).  The court started with the "threshold question" whether Daniels was among "the people" the Second Amendment covers.  *Daniels*, 77 F.4th at 342.  As in *Rahimi*, the court noted that the phrase "law-abiding" "was just 'short-hand' to 'exclude from the . . . discussion' the mentally ill and felons, people who were historically 'stripped of their Second Amendment rights.'" *Id.* at 343 (quoting *Rahimi*, 61 F.4th at 452).  "Because Daniels [was] not a felon . . . *Rahimi*'s treatment of the 'law-abiding' moniker suggests that he has presumptive Second Amendment rights as well." *Id*.

In short, the circuit's post-*Heller* and pre-*Bruen* authority holds that § 922(g)(1) does not violate the Second Amendment.  See *Anderson*, 559 F.3d at 352.  The court reached that conclusion without employing the now-defunct means-end test.  *See id.*; *see also Darrington*, 351 F.3d at 635.  So *Bruen* should have no bearing on those holdings.  And after *Bruen*, the Fifth Circuit followed the *Heller*, *McDonald*, and *Bruen* dicta by asking as the "threshold question" whether the defendant was a felon—shorthand for whether the defendant falls within the "people" the Second Amendment protects.  *Daniels*, 77 F.4th at 342.

Thus, the Supreme Court and the Fifth Circuit have given every possible signal that *Bruen* did not alter *Heller*'s pronouncement that statutes like § 922(g)(1) are "presumptively lawful." *Heller*, 554 U.S. at 627 n.26. And if that statute is presumptively lawful, then it seems inconsistent to require the government to disprove that "the Constitution presumptively protects that conduct" through the "Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

For these reasons, "[t]his court . . . joins with over a hundred others in the Fifth Circuit in rejecting [D]efendant's constitutional challenge to his § 922(g)(1) charge." *United States v. Delafose*, No. 2:23-CR-00185-01, 2023 WL 7368239, at *1–2 (W.D. La. Nov. 7, 2023) (citing *United States v. Bazile*, No. CR23-24, 2023 WL 7112833, at *3–4 (E.D. La. Oct. 27, 2023) (collecting cases)).

Defendant's motion [24] is denied. The parties are directed to contact Courtroom Deputy Shone Powell to set this matter for a Zoom conference.

**SO ORDERED AND ADJUDGED** this the 1st day of December, 2023.

                                        s/ *Daniel P. Jordan III*
                                        CHIEF UNITED STATES DISTRICT JUDGE